# 2014-1042

In The

# United States Court Of Appeals
# For The Federal Circuit

**ROTATABLE TECHNOLOGIES LLC,**

*Plaintiff-Appellant,*

v.

**MOTOROLA MOBILITY LLC,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
SAMSUNG ELECTRONICS AMERICA, INC., APPLE INC.,**

*Defendants-Appellees.*

Appeal from the United States District Court for the Eastern District of Texas
In Case No. 2:12-cv-00265-JRG, Judge Rodney Gilstrap.

––––––––––––––

## BRIEF OF APPELLANT

––––––––––––––

**Hao Ni
Timothy T. Wang
NI, WANG &
  ASSOCIATES, PLLC
8140 Walnut Hill Lane
Suite 310
Dallas, Texas 75231
(972) 331-4600**

*Counsel for Appellant*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, Rotatable Technologies LLC, certifies the following:

1.    The full name of every party or amicus represented by me is:

       Rotatable Technologies LLC

2.    The name of the real party in interest represented by me is:

       None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

       None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

HAO NI
TIMOTHY T. WANG
STEVENSON MOORE V
Ni, Wang & Associates, PLLC
8140 Walnut Hill Lane, Suite 310
Dallas, Texas 75231
(972) 331-4600 Telephone
(972) 314-0900 Facsimile

December 26, 2013        /s/ Hao Ni
                      Hao Ni

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ................................................................i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF RELATED CASES ............................................... vii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES............................................................2

STATEMENT OF THE CASE................................................................3

STATEMENT OF THE FACTS ..............................................................6

    I.      THE PATENTED TECHNOLOGY ......................................6

         A.    The '978 Patent ...........................................................6

         B.    The Asserted Claims ..................................................6

    II.    THE UNDERLYING ACTION...........................................8

         A.    The Complaint.............................................................8

         B.    The *Markman* Proceedings ........................................8

             1.    Parties' Claim Construction Positions.............8

             2.    The Claim Construction Order ......................10

    SUMMARY OF THE ARGUMENT ....................................................13

ARGUMENT ..................................................................................15

    I.      STATEMENT OF THE STANDARD OF REVIEW.........................15

    II.     THE DISTRICT COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE PREAMBLE TERM "SELECTIVELY ROTATING" IS A LIMITATION OF CLAIMS 9 AND 14 ............................................................................17

          A.    The Preamble Term "Selectively Rotating" Describes An Intended Use Of The Claimed Inventions ..................................19

          B.    "Selectively Rotating" Does Not Provide Antecedent Basis For Any Terms In The Bodies Of The Claims................20

          C.    "Selectively Rotating" Was Not Added To The Claims Or Relied On To Distinguish The Claimed Invention Over The Prior Art During Prosecution....................................21

    III.    THE DISTRICT COURT'S CONSTRUCTION OF "SELECTIVELY ROTATING A COMPUTER DISPLAY WINODW" VIOLATES SEVERAL FUNDAMENTAL PRINCIPLES OF CLAIM CONSTRUCTION ..................................25

    IV.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY LIMITING "ROTATING THE WINDOW ABOUT THE ROTATION POINT AT THE DISCRETION OF THE USER" TO A SINGLE EMBODIMENT OF THE INVENTION .................31

    V.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY FINDING THE TERM "MEANS FOR DETERMINING A ROTATION POINT" INDEFINITE....................................................37

CONCLUSION ..............................................................................41

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*3M Innovative Props. Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) ....................................................29

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007) ......................................................16

*Am. Med. Sys. v. Biolitec, Inc.*,
   618 F.3d 1354 (Fed. Cir. 2010) ..........................................18, 19, 20

*Brown v. 3M*,
   265 F.3d 1349 (Fed. Cir. 2001) ...................................................16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002) ..............................................*passim*

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998) ...................................................15

*Finisar Corp. v. DirecTV Grp., Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008) ...................................................38

*Function Media, L.L.C. v. Google Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ...................................................40

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
   222 F.3d 951 (Fed. Cir. 2000) ....................................................15

*Hormone Research Found., Inc. v. Genentech, Inc.*,
   904 F.2d 1558 (Fed. Cir. 1990) ...................................................16

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ...................................................37

*MBO Labs., Inc. v. Becton Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ...................................................17

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ....................................................35

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995) .....................................................16

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .............................................*passim*

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998) ...................................................16

*Praxair, Inc. v. ATMI, Inc.,*
    543 F.3d 1306 (Fed. Cir. 2008) ...................................................37

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ...................................................15

*Rowe v. Dror*,
    112 F.3d 473 (Fed. Cir. 1997) .....................................................17

*TecSec, Inc. v. IBM*,
    731 F.3d 1336 (Fed. Cir. 2013) ...................................................38

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .....................................................16

## FEDERAL STATUTES

28 U.S.C. § 1295(a)(1)......................................................................1

28 U.S.C. § 1331...............................................................................1

28 U.S.C. § 1338(a) ..........................................................................1

35 U.S.C. § 103................................................................................21

35 U.S.C. § 112.................................................................10, 37, 40

## FEDERAL RULES

FED. CIR. R. 47.5(a) ................................................................ix

FED. CIR. R. 47.5(b) ...............................................................ix

FED. R. APP. P. 4(a)(1)(A) .......................................................1

FED. R. EVID. 201 .................................................................39

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5(a), there has never been any other appeal in or from the lower court in this case. In accordance with Federal Circuit Rule 47.5(b), there is no case known to be pending in the Supreme Court, this Court, or any other circuit court of appeals that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The U.S. District Court for the Eastern District of Texas, Marshall Division, had subject matter jurisdiction over Plaintiff's claims for patent infringement, pursuant to 28 U.S.C. §§ 1331 and 1338(a). The district court entered final judgments of non-infringement in favor of Defendants on September 12, 2013[1] and September 18, 2013.[2] Plaintiff's October 4, 2013 notice of appeal was thus timely filed in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A).[3] This Court has exclusive jurisdiction over the instant appeal of the district court's final judgment, pursuant to 28 U.S.C. § 1295(a)(1).

---

[1] A1-A10.
[2] A11-A14.
[3] A546.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred as a matter of law by concluding that the preamble term "selectively rotating" is a limitation of claims 9 and 14 of U.S. Patent No. 6,326,978 (the "'978 patent")?

2.      Whether the district court erred as a matter of law by construing the preamble term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of orientation may be chosen"?

3.      Whether the district court erred as a matter of law by construing the term "rotating the window about the rotation point at the discretion of the user" as "at the user's determination, turning the window in a circular path about a rotation point"?

4.      Whether the district court erred as a matter of law by concluding that claim 14 and its dependent claims (*i.e.*, claims 16 and 18) are invalid for indefiniteness, because no corresponding structure is disclosed in support of the "means for determining a rotation point" limitation in claim 14 of the '978 patent?

# STATEMENT OF THE CASE

On May 1, 2012, Rotatable Technologies LLC ("Rotatable" or "Plaintiff") filed a complaint against Motorola Mobility LLC ("Motorola"), Samsung Telecommunications America, LLC and Samsung Electronics America, Inc. (collectively "Samsung")[4], and on May 15, 2012, Rotatable filed a complaint against Apple, Inc. ("Apple")[5] (Motorola, Samsung and Apple collectively "Appellees" or "Defendants") alleging in both cases infringement of various claims of U.S. Patent No. 6,326,978 (the "'978 patent")[6], entitled "Display Method for Selectively Rotating Windows on a Computer Display," by making, using, selling, offering to sell, or importing devices having software programs capable of rotating a computer display window at a user's discretion.

On July 15, 2013, the district court held a *Markman* hearing for construing various terms in claims 9, 11, 13, 14, 16, and 18 of the '978 patent ("Asserted Claims").[7] The Memorandum Opinion and Order on Claim Construction (the "Claim Construction Order") was entered on August 2, 2013.[8]

---

[4] A69-A75.
[5] A76-A81.
[6] A48-A53.
[7] A383-A419.
[8] A15-A48.

The Claim Construction Order determined that the preamble term "selectively rotating" was a limitation of all of the Asserted Claims[9] and construed the preamble term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of orientation may be chosen."[10] Additionally, the Claim Construction Order construed the term "rotating the window about the rotation point at the discretion of the user" in claim 9 as "at the user's determination, turning the window in a circular path about a rotation point."[11]

The Claim Construction Order also determined that claim 14 and its dependent claims (*i.e.*, claims 16 and 18) are invalid for indefiniteness "because no corresponding structure is disclosed in support of the 'means for determining a rotation point' limitation." [12]

Based solely upon the district court's construction of the above terms, Rotatable and Appellees agreed that there was no just cause for delay and stipulated to the district court's entry of final judgment of non-infringement on the claims asserted in Rotatable's complaints.[13]   The district court entered final

---

[9] A33.
[10] A35.
[11] A43.
[12] A44.
[13] A528-A533, A534-A539, A540-A545.

judgments of non-infringement in favor of Appellees on September 12, 2013[14] and

September 18, 2013.[15]  On Oct. 4, 2013, Rotatable filed its notice of appeal.[16]

_____

[14] A1-A5, A6-A10.

[15] A11-A15.

[16] A546.

# STATEMENT OF THE FACTS

## I.     THE PATENTED TECHNOLOGY

### A.     The '978 Patent

The '978 Patent aims to meet the need for a display system and method that allows a user to rotate windows on a computer display at his discretion.[17] Rotating a window relative to the display allows a user to reorient a window to better present information displayed by the window. The window can be rotated to any angle the user chooses or rotation may be limited to predetermined increments or preselected orientations, such as 90, 180, 270, or 360 degrees.[18] The flexibility made possible by the inventions of the '978 Patent offers a more manageable computer interface fit for the various needs of a user. The '978 Patent application was filed on April 20, 1999, and issued on December 4, 2001.

### B.     The Asserted Claims

Claims 9 and 14 of the '978 Patent describe a novel method and a novel system, respectively, for rotating a computer display window (appealed claims terms are italicized):

9.   A method of *selectively rotating a computer display window* having a display portion and a frame surrounding the display portion, the method comprising the steps of:
determining a rotation point; and
*rotating the window about the rotation point at the discretion of the user*;

---

[17] *See* A51, col. 2, ll. 18-29.

[18] *Id.*

wherein the plane of the window, the plane of rotation, and the rotation point are coplanar.[19]

14. A system for *selectively rotating a computer display window* having a display portion and a frame surrounding the display portion, the system comprising:
*means for determining a rotation point*; and
means for rotating the window about the rotation point at the discretion of the user;
wherein the plane of the window, the plane of rotation, and the rotation point are coplanar. *"Id."*

Claim 11, which depends directly from claim 9, recites:

11. The method according to claim 9, wherein the step of rotating comprises the step of rotating the window by predetermined increments.[20]

Claim 13, which depends directly from claim 9, recites:

13. The method according to claim 9, wherein the step of rotating comprises the step of returning the window to a zero degree orientation.[21]

Claim 16, which depends directly from claim 14, recites:

16. The system according to claim 16, wherein the means for rotating comprises means for rotating the window by predetermined increments.[22]

Claim 18, which depends directly from claim 14, recites:

18. The system according to claim 18, wherein the means for rotating comprises means for returning the window to a zero degree orientation.[23]

---

[19] A53.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

## II.     THE UNDERLYING ACTION

### A.     The Complaint

On May 1, 2012, Rotatable Technologies LLC ("Rotatable") filed a complaint against Motorola and Samsung[24], and on May 15, 2012, Rotatable filed a complaint against Apple[25] alleging, *inter alia*, infringement of various claims of the '978 patent by making, using, selling, offering to sell, or importing devices having software programs capable of rotating a computer display window at the user's discretion.[26]

### B.     The *Markman* Proceedings

#### 1.     Parties' Claim Construction Positions

Rotatable contended that the preamble term "selectively rotating" is not a limitation of claims 9 or 14, and therefore a construction was unnecessary. The reasons are at least four-fold: (1) the term describes an intended use of the invention and does not give life, meaning or vitality to the claims, (2) the claims are readily understood without this term, (3) the term does not serve as antecedent basis for any other term in the claims, and (4) the term was not the basis for an amendment or distinguishing over the prior art during prosecution. Appellees contended that the entire preambles of claims 9 and 14 were limitations.

---

[24] A69-A75

[25] A76-A81.

[26] A79.

Even if the term "selectively rotating" were found to be a limitation of claims 9 and 14, Rotatable proposed that the preamble term "selectively rotating a computer display window" should be construed as "rotating the computer display window upon receipt of a user input." The '978 Patent repeatedly states that "[t]he rotation may be freely chosen or limited to selected angles of rotation such as 0, 90, 180, and 270 degrees" and such rotation occurs upon receipt of a user input (*e.g.*, a single click, a double-click, clicking and holding, dragging, a rotation button, a menu command, a key stroke, a rotation cursor, etc.).[27] Indeed, the dependent claims are directed to the different embodiments of free rotation (*e.g.*, claims 10 and 15) and limited rotation (e.g., claims 12, 13, 16 and 17). Appellees contended that "selectively rotating a computer display window" should be construed as "rotating a computer display window such that any angle of orientation may be chosen, including an angle other than 0, 90, 180, 270 and 360 degrees."

For the term "rotating the window about the rotation point at the discretion of the user," Rotatable proposed that the claim language was easily understood and did not require a construction. However, if construction was deemed necessary, Rotatable proposed that the construction "rotating the window about the rotation point upon receipt of a user input" was true to the intrinsic evidence, because the

---

[27] A48, A51, 52

9

"rotating" occurs at the "discretion of the user." As noted above, the '978 Patent describes various user input (*e.g.*, a single click, a double-click, clicking and holding, dragging, a rotation button, a menu command, a key stroke, a rotation cursor, etc.) for rotating a window. Appellees contended that the claim term should be limited to rotating "in a circular path" and where "the user may select any amount of rotation."

As to "means for determining a rotation point" recited in claim 14, the parties agreed that the term should be interpreted under 35 U.S.C. § 112, ¶ 6 and further agreed that the claimed function is "determining a rotation point." Rotatable identified the structure for performing the claimed function as the algorithm described in the specification for performing the claimed function: "a computer program that selects (i) a default rotation point, or (ii) a user-selected rotation point for a window, and equivalents thereof." Appellees asserted that the claim term was indefinite for lack of structure.

### 2. The Claim Construction Order

On August 2, 2013, the district court issued its Claim Construction Order construing terms of the asserted claims. The district court concluded that preamble term "selectively rotating" was transformed into a claim limitation in view of a single statement made by the applicant during prosecution. The district court further determined that, in view of that single statement, the preamble term

"selectively rotating the computer display window" was limited to rotation "such that any angle of orientation may be chosen," disclaiming the embodiments of the invention in which rotation is limited to predetermined increments or preselected orientations.[28]

The district court construed the term "rotating the window about the rotation point at the discretion of the user" as "at the user's determination, turning the window in a circular path about a rotation point." [29]  While the '978 Patent provides a frame of reference for the degree of rotation of a window ("[d]egrees of orientation will be based on a 360 degree circle") and describes an exemplary embodiment in which the window is rotated in a circular path about a rotation point, the '978 Patent never limits the rotation to "a circular path" or any geometrical path.  For example, the '978 Patent describes an embodiment in which the rotation point of the window is outside of window, and rotation about such rotation point "will result in both rotation and translation of the window."[30]  In such an embodiment, there is no requirement that the window move along a circular path as it rotates about the rotation point.

---

[28] A35.
[29] A43.
[30] A52, 4:36-41.

The district court also interpreted "as the discretion of the user" to mean that the user may select any amount of rotation for the window.[31]  Such a construction excludes the described and claimed embodiments in which rotation is limited to predetermined increments and preselected orientations.

Finally, the district court found that claims 14, 16 and 18 were indefinite, because the '978 Patent lacked disclosure of structure for the claimed "means for determining a rotation point," ignoring the algorithm described in the specification.[32]

---

[31] A42-A43.
[32] A44-A45.

# SUMMARY OF THE ARGUMENT

For several reasons, this Court should reverse the district court's construction of the claim terms identified above and remand this case to the district court for further proceedings.

First, the district court erred by finding that the preamble term "selectively rotating" is a limitation of claims 9 and 14, because (1) the term describes an intended use of the invention and does not give life, meaning or vitality to the claims, (2) the claims are readily understood without this term, (3) the term does not serve as antecedent basis for any other term in the claims, and (4) the term was not the basis for an amendment or distinguishing over the prior art during prosecution.

Second, even if the preamble term "selectively rotating" is determined to be a limitation, the district court erred in construing the preamble term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of orientation may be chosen."  The district court's construction violates fundamental principles of claim construction by excluding the described and claimed embodiments of the invention in which rotation is limited to predetermined increments and preselected orientations.  Such a construction also violates the doctrine of claim differentiation, because different dependent claims are directed to embodiments of freely chosen rotation and rotation limited to

predetermined increments and preselected orientations. The district court's sole basis for its construction – a single sentence in the prosecution history – does not rise to the clear and unmistakable disavowal of claim scope required to limit a claim to exclude described and claimed embodiments.

Third, the district court's construction of the claim term "rotating the window about the rotation point at the discretion of the user" is flawed, because it requires the window to be rotated "in a circular path." The "circular path" requirement does not construe any language of the claim, simply inserting extraneous language that improperly limits the claims to one of the described embodiments of the invention. The district court's construction further requires that the user be able to select any amount of rotation, which, as explained above, excludes embodiments of the invention in which the rotation is limited to predetermined increments or preselected orientations.

Finally, the district court's determination that the claimed "means for determining a rotation point" is indefinite ignores the algorithm described in the specification for performing the claimed function. Thus, the court's indefiniteness finding lacks support and cannot meet the high burden of finding indefiniteness.

# ARGUMENT

Appellant respectfully requests oral argument to aid the decisional process, and it expressly reserves the right to assert in any further briefing any argument raised in the district court, even if those arguments are not specifically asserted in the instant brief.

## I. STATEMENT OF THE STANDARD OF REVIEW

Claim construction is a question of law that this Court reviews *de novo*.[33] As this Court has stated, "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the rights to exclude."[34] Indeed, "[w]ithout any claim term that is susceptible to clarification . . . there is no legitimate way to narrow the property right."[35]

"Claim construction analysis begins with the claim language itself."[36] This Court "gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art."[37] In some cases, the ordinary meaning of claim language "may be readily apparent even to lay judges, and claim construction in

---

[33] *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

[34] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quotations omitted).

[35] *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

[36] *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000).

[37] *Id.*

such cases involves little more than the application of the widely accepted meaning of commonly understood words."[38]  In such cases, "a sound claim construction need not always purge every shred of ambiguity.  The resolution of some line-drawing problems-especially easy ones … is properly left to the trier of fact."[39]  Where the meaning of the claim language is not immediately apparent, however, or where the patentee has used a term idiosyncratically, "an analysis of the intrinsic evidence alone will[, in most cases,] resolve any ambiguity in a disputed claim term."[40]

Although statements made by applicant during prosecution are part of the intrinsic evidence, there must be a clear intent to surrender claim scope to

---

[38] *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation")).

[39] *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007); *see also PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.").

[40] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996) ("[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." (citation omitted)); *see also Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) ("In construing the claims we look to the language of the claims, the specification, and the prosecution history.  Extrinsic evidence may also be considered, *if needed* to assist in determining the meaning or scope of technical terms in the claims." (citations omitted, emphasis added)); *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990) ("Claim interpretation involves a review of the specification, the prosecution history, the claims (including unasserted as well as asserted claims), and, *if necessary,* other extrinsic evidence, such as expert testimony." (emphasis added)).

constitute a disclaimer.[41]  The standard for "clear disclaimer" is a stringent one and is satisfied only if there is "a clear disclosure that the patentee intended the claims to be limited as shown."

## II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE PREAMBLE TERM "SELECTIVELY ROTATING" IS A LIMITATION OF CLAIMS 9 AND 14

Claim 9 recites a method and Claim 14 recites a system, but both claims recite the same preamble:  "A [method/system] for selectively rotating a computer display window having a display portion and a frame portion surrounding the display portion."[42]  The district court held that the preamble term "selectively rotating" is a limitation of the claims.[43]  However, as explained below, the preamble term "selectively rotating" is not a limitation, because (i) it merely describes an intended use of the invention, (ii) the claims are readily understood without this term, (iii) it does not provide antecedent basis for a term in the body of the claim, and (iv) it was not added to the claims or clearly relied on during prosecution to distinguish the claimed invention from the prior art.[44]

---

[41] *See MBO Labs., Inc. v. Becton Dickinson & Co.*, 474 F.3d 1323, 1334 (Fed. Cir. 2007); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

[42] A53, Claims 9; 14.

[43] A33-A34

[44] *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'") (*quoting Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

The preamble issue in the instant case is nearly identical to the preamble issue addressed by this Court in *American Medical Systems, Inc. v. Biolitec, Inc.*[45] In *American Medical*, the patent at issue contained method and apparatus claims which recited the same preamble: "A [method/apparatus] for photoselective vaporization of tissue."[46] This Court found that the preamble term "photoselecive vaporization" was not a limitation on the method or apparatus claims, because (1) "there is no suggestion in the prosecution history…that the inventors added the phrase 'photoselective vaporization' in order to distinguish their invention from the prior art," (2) the term did not provide antecedent basis for any terms in the bodies of the claims, and (3) the term "does not embody an essential component of the invention…[but] is simply a descriptive name for the invention that is fully set forth in the bodies of the claims."[47]

Therefore, for reasons similar to those in *American Medical*, the Court should reverse the district court's finding that the preamble term "selectively rotating" is a limitation.

---

[45] *Am. Med. Sys. v. Biolitec, Inc.*, 618 F.3d 1354 (Fed. Cir. 2010).
[46] *Id*. at 1356.
[47] *Id*. at 1359-60.

## A. The Preamble Term "Selectively Rotating" Describes An Intended Use Of The Claimed Inventions

The preamble term "selectively rotating" appears on in the preambles of claims 9 and 14 and merely describes an intended use of the overall inventions recited in the bodies of the claims.

The body of method claim 9 recites all of the steps necessary to practice the invention. Claim 9 recites the steps of "determining a rotation point" and "rotating the window about the rotation point at the discretion of the user." There is no need to resort to the preamble term "selectively rotating" to further define the invention of claim 9. As stated by the Court in *American Medical*, the preamble term is not deemed a limitation when "the bodies of the asserted method claims contain all the steps necessary to practice the invention."[48]

As a system (or apparatus) claim, claim 14 deserves separate consideration.[49] The body of system claim 14 recites all of the structures necessary to practice the invention. Claim 14 recites the structures of "means for determining a rotation point" and "means for rotating the window about the rotation point at the discretion of the user." Thus, there is no need to resort to the preamble term "selectively rotating" to further define the invention of claim 14.

---

[48] *Id*. at 1360.

[49] *Catalina Marketing*, 289 F.3d at 809 ("Preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure.").

Therefore, it is clear that the preamble term "selectively rotating" merely describes an intended use of the inventive method of claim 9 and the inventive system of claim 14 and, accordingly, is not a limitation on such claims.

## B. "Selectively Rotating" Does Not Provide Antecedent Basis For Any Terms In The Bodies Of The Claims

The preamble term "selectively rotating" appears only in the preambles of claims 9 and 14 and does not provide antecedent basis for any claim terms in the bodies of the claims. The body of method claim 9 recites the step of "rotating the window about the rotation point at the discretion of the user." Similarly, the body of system claim 14 recites a "means for rotating the window about the rotation point at the discretion of the user." Neither claim includes any element which refers back to the preamble term "selectively rotating." Therefore, the preamble term "selectively rotating" is not essential to understanding the limitations or terms in the bodies of claims 9 and 14, because the bodies of claims 9 and 14 define structurally complete inventions. In fact, in both claims 9 and 14, the preamble term "selectively rotating" could be removed from the claim, and there would be no resulting difference in claim scope or clarity.[50]

---

[50] *American Medical*, 618 F.3d at 1358-59 ("A preamble is not regarded as limiting, however, 'when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention.'") (*quoting Catalina*, 289 F.3d at 809).

As the preamble term "selectively rotating" does not provide antecedent basis for any of the terms in the bodies of claims 9 and 14, it is not a limitation of such claims.

### C. "Selectively Rotating" Was Not Added To The Claims Or Relied On To Distinguish The Claimed Invention Over The Prior Art During Prosecution

"Selectively rotating" was not used by the patentee as a basis to distinguish the prior art, and as such, is not a limitation of claims 9 and 14.

It is undisputed that the preamble term "selectively rotating" was recited in original, as-filed claims 9 and 14. Thus, "selectively rotating" cannot be deemed a limitation of the claims, because it was not the basis for a limiting amendment to overcome a prior art rejection.

Further, the preamble term "selectively rotating" was not relied on to distinguish the claimed invention from the prior art. Original claims 9 and 14 were amended only once during prosecution, in response to a rejection under 35 U.S.C. § 103 in view of Horvitz, to include the "wherein" clause at the end of each claim – "wherein the plane of window, the plane of rotation, and the rotation point are coplanar." In distinguishing Horvitz, the applicant never mentioned the preamble term "selectively rotating."

Amended claims 9 and 14 were rejected under 35 U.S.C. § 103 in view of Horvitz and Jensen, "because Horvitz discloses a way to rotate a window and

Jensen discloses a way to coplanar rotate a window defined pixel region in order to reduce computational cycles and conserve memory space."[51]  In response, the applicant set forth four reasons to rebut the rejection based on the combination of Horvitz and Jensen.  In the fourth and final reason as to why the rejection should be withdrawn, the applicant argued that the combination of Horvitz and Jensen was improper under MPEP 2143.01, "The Proposed Modification Cannot Change the Principle of Operation of a Reference."[52]  In particular, the applicant stated:

> Fourth, according to M.P.E.P. § 2143.01, '[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious.' As noted in the Amendment dated May 19, 2001, '[i]n all instances [as taught by Horvitz], the edges of the window always remain parallel to two of the three X-, y-, and z-axes.'  By contrast, a window that has been selectively rotated to any angle, other than 0, 90, 180, 270, and 360 degrees, as claimed will have none of its edges parallel to the three x-, y-, and z-axes. Thus, the suggested modification would result in a change to the principle of operation of Horvitz. As a result, the teachings of the references are not sufficient to render the claims prima facie obvious.[53]

The Examiner maintained the rejection of claims 9 and 14, and the applicant filed an appeal brief, restating the argument above and providing further arguments that the combination of Horvitz and Jensen was improper.[54]  In response to the

---

[51] A220.

[52] A148.

[53] A148-A149.

[54] A157-A158. ("Horvitz and Jensen disclose different display techniques because they operate on different objects….As a result, it is inappropriate to combine the references.").

Appeal Brief, the Examiner allowed all of the pending claims with several stated "Reasons for Allowance" – none referenced "selectively rotating."

The district court determined that the preamble term "selectively rotating" was a limitation based solely on a single sentence in the prosecution: "By contrast, a window that has been selectively rotated to any angle, other than 0, 90, 180, 270, and 260 degrees, as claimed will have none of its edges parallel to the three x-, y-, and z-axes."[55] Such a determination is erroneous, because this single sentence (1) does not rise to the level of "clear reliance" on the preamble, and (2) was not made to distinguish the invention from the prior art – it was used to argue the impropriety of combining Horvitz and Jensen.

First, a single sentence cannot demonstrate the "clear reliance" on the preamble that is required to transform the preamble into a limitation.[56]("***clear reliance*** on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation") (emphasis added). As noted above, the preamble term "selectively rotating" was recited in the originally-filed, and thus not the subject of a narrowing amendment. The applicant did not make the referenced statement until the amended claims were rejected in view of Horvitz and Jensen. Thus, there was no "clear reliance" by the applicant on the preamble term.

---

[55] A33.

[56] *Catalina*, 289 F.3d at 808

Second, the single sentence does not demonstrate that the preamble term "selectively rotating" was used to distinguish the claimed invention from the prior art. "Selectively rotating" was recited in the preambles of claims 9 and 14 as originally filed. The original claims were rejected solely in view of Horvitz. The applicant amended the claims to include the "wherein" clause and never mentioned the preamble term "selectively rotating." When the Examiner rejected the amended claims based on the combination of Horvitz and Jensen, the applicant set forth several reasons why the combination was improper based on the "different display techniques" and "different objects" discussed in Horvitz and Jensen. In particular, the referenced statement was made in an argument based on MPEP 2143.01 which deals exclusively with modifications and combinations of prior art. The applicant expressly stated that the argument was directed to the Examiner's basis for combining Horvitz and Jensen: "the suggested modification [based on Jensen] would result in a change to the principle of operation of Horvitz."[57] Thus, it is entirely clear that the applicant was arguing that the combination of Horvitz and Jensen was improper, not that either Horvitz or Jensen failed to disclose the preamble term "selectively rotating."

The Examiner's reasons for allowance confirms that the preamble term "selectively rotating" was not a basis for distinguishing the prior art. The

_____

[57] A149.

24

Examiner recited several reasons for allowance and never mentioned, expressly or implicitly, that the claims were allowed because the prior art failed to teach "selectively rotating."  To the contrary, the Examiner expressly stated that Horvitz failed to disclose the claimed "wherein" clause, and never mentioned Jensen. Thus, there is no evidence that the Examiner considered referenced statement; the Examiner could have relied on one of the several other bases recited by the applicant that the claims were allowable over Horvitz and Jensen.

Accordingly, the preamble term "selectively rotating" was not clearly relied upon by the patentee during prosecution to distinguish the claimed invention from the prior art.

## III.   THE DISTRICT COURT'S CONSTRUCTION OF "SELECTIVELY ROTATING A COMPUTER DISPLAY WINODW" VIOLATES SEVERAL FUNDAMENTAL PRINCIPLES OF CLAIM CONSTRUCTION

Even if this Court finds that the preamble term "selectively rotating" is a limitation on the claims and warrants a construction, the district court's construction should be reversed, because it reads limitations from exemplary embodiments of the invention described in the specification into the claims to the exclusion of other described and claimed embodiments.

The '978 Patent is very clear that the window may be rotated to any angle or the rotation may be limited to preselected increments or predetermined orientations.  The Abstract and Summary of the Invention states that rotation of the

window "may be freely chosen **_or_** limited to selected angles of rotation such as 0, 90, 180, and 270 degrees."[58] (emphasis added).  The Detailed Description of the Preferred Embodiments describes an exemplary embodiment in which a user clicks and holds a rotation button on a computer display window and drags the window to a selected orientation.[59]  In this exemplary embodiment, the user may choose any angle of orientation or may be limited to choosing preselected angles of orientation.[60]  In another exemplary embodiment, a single click on the rotation button results in the window being rotated by a preselected amount or to a preselected orientation.[61]  In yet another exemplary embodiment, clicking on the rotation button toggles the window between two preselected orientations.[62]  In still another exemplary embodiment, double-clicking on the rotation button returns the window from its current orientation to the home or zero degree orientation.[63]  The '978 Patent goes on to explain that the function(s) of the rotation button could be the result of "other input device combinations of clicking, holding, or both" and "could be accomplished through menu driven commands or special key strokes in addition to or in place of the use of the rotation button."[64]

---

[58] A48 Abstract, '978 Patent; *see also* A51 '978 Patent, col. 2, ll. 37-39.

[59] A52, 3:42-44.

[60] *Id.*, 46-50.

[61] *Id*. at 3:50-52.

[62] *Id*. at 3:56-57.

[63] *Id*. at 3:57-59.

[64] *Id*. at 3:61-4:1.

Independent claims 9 and 14 do not contain any limitations on the amount of rotation or the input required to invoke rotation, encompassing the specification's clear description of rotation that is freely chosen or limited to predetermined increments or preselected orientations.  The bodies of both claims recite "rotating the window about the rotation point at the discretion of the user."  The dependent claims limit the amount of rotation to "predetermined increments" (claims 11 and 16) and "two preselected orientations" (claims 12 and 17).[65]  Other dependent claims refer to rotation that is freely chosen – "clicking and holding the window while dragging the window to the selected orientation" (claims 10 and 15).[66]

The district court correctly acknowledged that multiple modes of rotation are described in the '978 Patent.  However, the district court construed the preamble term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of orientation may be chosen," excluding the described and claimed embodiments in which rotation is limited to predetermined increments and preselected orientations.  The district court's sole basis for excluding these embodiments was the single sentence regarding the combination of Horvitz and Jensen in the prosecution history.  There are several reasons that the district court's construction should be reversed.

---

[65] A53.

[66] *Id.*

First, the district court's claim construction errs by reading a limitation into the claims and excluding described embodiments of the invention. As this Court has reiterated time and again, one of the bedrock principles of claim construction is that claims should not be limited to preferred embodiments, and limitations should not be imported from the specification into the claims.[67] As explained above, several embodiments of the inventions are described in which rotation is limited to predetermined increments or preselected orientations and the district court's construction of the preamble term "selectively rotating a computer display window" would exclude all of those embodiments.

Second, the district court failed to address the impact of its construction on the dependent claims which limit rotation of the window to "predetermined increments" (claims 11 and 16) and "two preselected orientations" (claims 12 and 17).[68] These claims are consistent with the description of the various embodiments of the invention in which rotation is limited: "the user may be able to choose any orientation within the 360 degree circle *or the choices may be limited to certain preselected orientations such as 0, 90, 180 and 270 degrees*."[69] In contrast, dependent claims 10 and 15 are directed to the embodiments in which the user may be able to choose any orientation for the window by "clicking and holding the

---

[67] *Phillips*, 415 F.3d at 1323.

[68] A53.

[69] A52, 3:47-50 (emphasis added)

window while dragging the window to the selected orientation."[70]  Therefore,

the district court's claim construction must be wrong, because it excludes the

subject matter of claims 11, 12, 16 and 17 and it replaces the "or" in the

specification with "and" as "the user may be able to choose any orientation

within the 360 degree circle ~~or~~ **and** the choices may be limited to certain

preselected orientations...."

Third, the district court's sole basis for its improperly narrow

construction is a single sentence made by the applicant during prosecution.

However, the district court misapplies the doctrine of prosecution disclaimer,

because this one statement does not rise to the clear and unmistakable

disavowal of claim scope required to limit a claim to a single embodiment to

the exclusion of others.  This Court has explained on numerous occasions,

> "our precedent requires that, in order for prosecution disclaimer to
> attach, the disavowal must be both clear and unmistakable.  Our cases
> also warn that, because the prosecution history represents an ongoing
> negotiation between the PTO and the inventor, 'it often lacks the clarity
> of the specification and thus is less useful for claim construction
> purposes.'"[71]

As explained above, the preamble term was recited in the originally-filed

claims.  The sole statement referenced by the district court was made in

response to the Examiner's allegation that motivation existed to combine

---

[70] A53.

[71] *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325-26 (Fed. Cir. 2013) (*quoting Phillips*, 415 F.3d at 1317) (other internal citations omitted).

Horvitz and Jensen – references that discussed different techniques for rotation of different objects.  Applicant's statement did not define the term "selectively rotating" or ever state that Jensen failed to disclose "selectively rotating" its textured tile.  The applicant had already overcome the rejection based on Horvitz alone without amending or arguing the "selectively rotating" claim term.

Therefore, prosecution disclaimer cannot apply to the construction of "selectively rotating a computer display window," because there was no "clear and unmistakable" disclaimer of claim scope that can be drawn from a single sentence arguing against the motivation to combine Horvitz and Jensen.

Finally, the term "selectively rotating a computer display window" does not require construction.  Indeed, the district court's construction of this preamble term only construes the term "selectively" as "such that any angle of orientation may be chosen" – the remaining terms of the district court's construction are verbatim claim language.  However, should this Court determine that construction is necessary, "selectively rotating a computer display window" should be construed as "rotating the computer display window upon receipt of a user input," *i.e.*, when the user selects to rotate the window.  The term "selectively rotating" is duplicative of the limitation "at the discretion of the user" recited in the bodies of claims 9 and 14.  The terms are clearly directed to "when" to rotate the window – the user selects when to rotate the window by

entering some input. The '978 Patent describes various input components (e.g., the rotation button, menu commands, key strokes, rotation cursors) and various types and sequences of input (clicking and/or holding, double-clicking, dragging) for rotating the window, all of which are used to rotate the window "upon receipt of a user input."

Therefore, the district court's claim construction of the preamble term "selectively rotating a computer display window" should be reversed, and if this Court determines that a construction is necessary, the term should be defined as "rotating the computer display window upon receipt of a user input" to encompass all described and claimed embodiments of the invention.

## IV.  THE DISTRICT COURT ERRED AS A MATTER OF LAW BY LIMITING "ROTATING THE WINDOW ABOUT THE ROTATION POINT AT THE DISCRETION OF THE USER" TO A SINGLE EMBODIMENT OF THE INVENTION

Claim 9 recites the step of "rotating the window about the rotation point at the discretion of the user," which the district court construed as "at the user's determination, turning the window in a circular path about a rotation point." The district court's construction is erroneous for at least three reasons.

First, the district court erred by requiring that the rotation be "in a circular path," because it confused degree of rotation with path of rotation. The '978 Patent states that "[f]or reference purposes…[d]egrees of rotation will be based on a 360 degree circle measured in a counter-clockwise manner about a rotation point

(not shown) with 0 degrees to the right, 90 degrees above, 180 degrees to the left, and 270 degrees below the rotation point."[72] With that frame of reference established, "the user may be able to choose any orientation within the 360 degree circle or the choices may be limited to certain preselected orientations such as 0, 90, 180, and 270 degrees."[73] Thus, the reference to "a 360 degree circle" is focused solely on the degree of rotation about a rotation point and is not limited to the path of rotation.

A simple example illustrates the difference between degree of rotation and path of rotation. Figure 2 (reproduced below) of the '978 Patent shows the window 10 after being rotated 310 degrees counter-clockwise about the rotation point 30. In this example, as correctly acknowledged by the district court, the window 10 has rotated in a circular path 310 degrees counter-clockwise about the rotation point 30.

---

[72] A52, 3:5-12.
[73] *Id.* at 3:47-50



FIG. 2

The '978 Patent, however, describes and claims (claim 8) another embodiment (ignored by the district court) in which the rotation point is "outside of the window" which "will result in both rotation **and translation** of the window from the starting orientation to the final orientation."[74]   In this embodiment, the degree of rotation may be the same, but the geometry of the path can be different. For example, assuming the same 360 degree frame of reference as the exemplary embodiment shown in Figure 2 of the '978 Patent, reproduced below is a window

---

[74] *Id.* at 4:37-39 (emphasis supplied).

10 that is rotated 45 degrees about a rotation point 30 outside of the window and translates along a circular path (left side diagram) and a rectangular path (right side diagram).  In each case, the degree of rotation is measured relative to the rotation point, but the paths are geometrically distinct.[75]



Therefore, the district court's limitation of "a circular path" would exclude described and claimed embodiments of the invention.

Second, the district court construed "at the discretion of the user" to mean "at the user's determination."[76]  While such a construction may appear like it adds nothing to the meaning of the original claim language, the district court stated that its construction requires that "the user determines to what extent the window is rotated," *i.e.*, "the user chooses the window orientation or that the user may select

---

[75] Another simple example is running around a typical high-school track.  The track is non-circular (oval or elliptical), but by completing one lap, the runner's body will have rotated 360 degrees about a rotation point at the center of the track.
[76] A42-A43.

any amount of rotation."[77] The district court's sole basis for its construction is the portion of the specification "describing a user's ability to choose any orientation using the rotation button."[78] While the specification describes one embodiment in which the rotation button may be used to select any orientation, the district court's construction ignores all of the other described embodiments in which rotation is limited -- the rotation button (one of several examples of inputs that can be used to rotate the window) may be single-clicked to rotate the window by predetermined increments, single-clicked to rotate the window to preselected orientations, or double-clicked to return the window to its home or zero degree orientation.[79] Indeed, these limited forms of rotation are the subjects of the dependent claims, *e.g.*, claims 11-13 and 16-18. Thus, the district court's construction (or its interpretation of its construction) improperly limits the claims to a single embodiment, while excluding the other described and claimed embodiments.[80]

Finally, the district court's construction of "rotating the window about the rotation point at the discretion of the user" violates the presumption that the same term in a patent should be given the same construction.[81] Both claim terms include

---

[77] A42.

[78] *Id.*

[79] A52, 3:50-61.

[80] *Phillips*, 415 F.3d at 1323.

[81] *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("we presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

the term "rotating."  In "selectively rotating," the district court determined that "rotating" did not require construction, including the term in its construction ("rotating a computer display window…").  In "rotating the window about the rotation point…," the district court determined that "rotating" meant "turning…in a circular path."  The district court did not provide any basis for its differing constructions, and there is no basis in the intrinsic record to construe a well-understood term like "rotating" as "turning in a circular path."

As explained above, the claim term "rotating the window about the rotation point at the discretion of the user" is sufficiently well-understood and does not require a construction.[82]  To the extent that "at the discretion of the user" requires interpretation, it should be construed, as explained above, as "upon receipt of a user input."  The term is clearly directed to "when" to rotate the window – the user has discretion in determining when to rotate the window by entering some input.  The '978 Patent describes various input components (*e.g.*, the rotation button, menu commands, key strokes, rotation cursors) and various types and sequences of input (clicking and/or holding, double-clicking, dragging) for rotating the window, all of which are used to rotate the window "upon receipt of a user input."

---

[82] *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

## V.  THE DISTRICT COURT ERRED AS A MATTER OF LAW BY FINDING THE TERM "MEANS FOR DETERMINING A ROTATION POINT" INDEFINITE

The test for indefiniteness is a stringent one.[83] A claim or term is indefinite only "if reasonable efforts at claim construction prove futile, that is, if a claim is insolubly ambiguous, and no narrowing construction can properly be adopted."[84] Moreover, the Court must view the claim term through the eyes of a hypothetical person of ordinary skill in the art.[85]  Thus, if a person of ordinary skill in the art would understand the structure that acts as "means for determining a rotation point" from the teachings of the invention, the claim term may be properly construed in accordance with that construction, and is not indefinite.

It is undisputed that the claimed "means for determining a rotation point" is written in "mean-plus-function" form and should be interpreted under § 35 U.S.C. § 112, ¶ 6.  It is further undisputed that the claimed function is "determining a rotation point," and the inventions of the '978 Patent are software-based inventions.  Accordingly, under this Court's precedent, "the specification must disclose a special purpose computer as corresponding structure – *i.e.*, a computer

---

[83] *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008).

[84] *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1383 (Fed. Cir. 2005).

[85] *Phillips*, 415 F.3d at 1312-24 (words of a claim are given their ordinary and customary meaning based on how a person of ordinary skill in the art would understand them).

programmed to perform a disclosed algorithm."[86] The algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure."[87]

The '978 Patent clearly discloses a computer programmed to perform an algorithm for "determining a rotation point" by (i) selecting a default rotation point for the window, or (ii) selecting a user-selected rotation point for the window. The '978 Patent describes "a preselection routine" for determining a rotation point.[88] As part of the preselection routine, any point on or outside of the window may be "initially selected as the default rotation point."[89] To the extent the user is allowed to deviate from the default rotation point and desires to select a different rotation point, a variety of possible rotation points may be displayed for the user to choose from.[90] After the user selects a rotation point, the displayed rotation points are removed from the display.[91] ("Preferably, these points would not be shown to the user except as part of a preselection routine.")

The prose description of the algorithm for determining a rotation point could easily be expressed in flow chart form as:

---

[86] *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1348 (Fed. Cir. 2013).
[87] *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (internal citation omitted).
[88] A52, 4:23-32.
[89] *Id.* at 4:29-31.
[90] *Id.* at 28-30; Fig. 2.
[91] *Id.* ("Preferably, these points would not be shown to the user except as part of a preselection routine.")



Therefore, as Rotatable correctly identified, the corresponding structure is "a computer program that selects (i) a default rotation point, or (ii) a user-selected rotation point for a window, and equivalents thereof." The Court should reject the district court's erroneous finding of indefiniteness.

Rotatable further requests that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice of the construction of "means for determining a rotation point" set forth by the Patent Trial and Appeal Board ("PTAB") of the

United States Patent and Trademark Office as part of an *inter partes* review of the '978 Patent. The PTAB performed a claim construction analysis under 35 U.S.C. § 112, ¶ 6 and determined that the specification sufficiently describes an algorithm for performing the claimed function. The structure identified by the PTAB for performing the claimed function is, as similarly proposed by Rotatable, a computer that implements an algorithm of "determining a default rotation point *or* receiving a user selection into a computer of any rotation point within, on, or outside of a window on a display of the computer."[92] It is proper for the Court to take judicial notice of this decision by the PTAB.[93]

---

[92] A562 (emphasis in original)..

[93] *Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013) ("It is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding, even if it was not available to the lower court.").

## CONCLUSION

For the reasons stated above, Rotatable respectfully requests this Court: (1) vacate the Final Judgment of non-infringement; (2) reverse the district court's finding that the preamble term "selectively rotating" is a limitation, or if construed, reverse the district court's construction of "selectively rotating a computer display window"; (3) reverse the district court's construction of "rotating the window about the rotation point at the discretion of the user"; (4) reverse the district court's finding that "means for determining a rotation point" is indefinite; and (5) remand the case for further proceedings.

December 26, 2013              Respectfully submitted,

/Hao Ni/
HAO NI
hni@nilawfirm.com
TIMOTHY T. WANG
twang@nilawfirm..com
Ni, Wang & Associates, PLLC
8140 Walnut Hill Lane, Suite 310
Dallas, Texas 75231
(972) 331-4600 Telephone
(972) 314-0900 Facsimile
ATTORNEYS FOR PLAINTIFF-APPELLANT
ROTATABLE TECHNOLOGIES, LLC

**ADDENDUM**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| ROTATABLE TECHNOLOGIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:12-CV-265-JRG |
| NOKIA, ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

# TABLE OF CONTENTS

I. BACKGROUND…………………………………...………………………………………..3

II. LEGAL PRINCIPLES……...…………………………………………………………............3

III. U.S. PATENT NO. 6,326,978…………………………………………….…...…10

    A.    The Disclosure of the '978 Patent…………………………………..10

    B.    The Asserted Claims of the '978 Patent…………………………….12

IV. CONSTRUCTION OF DISPUTED TERMS…………………………….……………13

    A.    Whether the Preamble Terms in Claims 9 and 14 Are Limitations……...13

        1.    "Computer Display Window"………………………………15

        2.    "Selectively Rotating"………………………………………16

    B.    "Selectively Rotating a Computer Display Window"…………………..20

    C.    "Computer Display Window/Window"…………………………….....21

    D.    "Display Portion"……………………………………………………..23

    E.    "A Frame Surrounding the Display Portion"…………………………24

    F.    "Determining a Rotation Point"………………………………………25

    G.    "Rotation Point"………………………………………………………...26

    H.    "Rotating the Window About the Rotation Point at the
        Discretion of the User"……………………………………………….27

    I.    Means-Plus-Function Terms…………………………………………29

        1.    "means for determining a rotation point"………………………..29

        2.    "means for rotating the window about the rotation point at the
        discretion of the user"/"means for rotating the window by
        predetermined increments"/"means for returning the window
        to a zero degree orientation"……………………………………..30

V. CONCLUSION……………………………….………………………..……....31

## I. BACKGROUND

Plaintiff, Rotatable Technologies LLC, (hereinafter "RT") filed suit against Defendants on May 1, 2012, asserting United States Patent No. 6,326,978, titled "Display Method For Selectively Rotating Window On A Computer Display" (hereinafter, "the '978 patent" or "the patent-in-suit"). On July 15, 2013, the Court held a *Markman* hearing in the case (Dkt. 96.) This Memorandum and Order provides the Court's construction of the disputed claim terms at issue and the Court's determination of other disputed issues presented by the parties related to construction of the asserted claims of the '978 patent.

## II. LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims themselves, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and

may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent

application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

5

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112 ¶ 6 "mandates that such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (quoting 35 U.S.C. § 112 ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "[t]he next step is to determine the corresponding structure described in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or

7

prosecution history clearly links or associates that structure to the function recited in the claim." *Braun*, 124 F.3d at 1424.

"While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function." *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). "The question is not whether one of skill in the art would be capable of implementing a structure to perform the function, but whether that person would understand the written description itself to disclose such a structure." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008). Further, the identified structure needs to be more than a "black box." *See Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1382-82 (Fed. Cir. 2009). The structure needs to be described in detail and not abstraction. *See id.*

When a contention is made that a claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2, inquiry must be made as to whether the claim fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. The party seeking to invalidate a claim under 35 U.S.C. § 112 ¶ 2 as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003).

Where computer-implemented inventions are at issue and claimed using means-plus-function limitations, the Federal Circuit "has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328,

1333 (Fed. Cir. 2008). Rather, the patent must disclose sufficient algorithmic structure (or some other description) explaining how the computer performs the claimed function. *See id.* at 1332-37; *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383-84 (Fed. Cir. 2009); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008). The term "algorithm" in computer systems has broad meaning and encompasses "in essence a series of instructions for the computer to follow," *In re Waldbaum*, 457 F.2d 997, 998 (CCPA 1972), whether in mathematical formula, or a word description of the procedure to be implemented by a suitably programmed computer. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ("i.e.,…a step-by-step procedure for accomplishing a given result.").

The patentee may express that algorithm in any understandable way: a mathematical formula, in prose, as a flow chart, or in any other manner that provides sufficient structure. *Id.* But, "simply reciting 'software' without providing some detail about the means to accomplish the function is not enough." *Id.* at 1340-41. Further, even though the algorithm may be expressed in any understandable way, "an algorithm is still a step-by-step procedure for accomplishing a given result." *Ergo Licensing*, 673 F.3d at 1365 (internal citations and quotations omitted).

In limited circumstances, a general purpose computer may suffice as structure for a ***generic*** function (such as "processing") if the function is "coextensive with the structure disclosed." *Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc. (In re Katz Interactive Call Processing Patent Litig.)*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). However, a construction narrowing the functions to "***specific*** computer-implemented functions" requires corresponding algorithms to be disclosed. *Id.* at 1317.

9

If the patentee fails to disclose in the patent any algorithmic structure corresponding to the claimed function, the claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2.

The preamble of a claim is not limiting if a structurally complete definition of the invention is provided in the body of the claim and the preamble only states a purpose or intended use of the invention. However, a preamble term can be a limitation if a term in the preamble provides antecedent basis for a limitation appearing in the body of the claim or if a preamble term was used as a claim limitation to overcome prior art during prosecution. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-810 (Fed. Cir. 2002).

## III. U.S. PATENT NO. 6,326,978

### A.    The Disclosure of the '978 Patent

The '978 patent describes that the operating system of a computer through application programs running on the computer generate graphical user interfaces ("GUIs") that are displayed on a monitor or screen of a computer system.[1] Furthermore, the '978 patent identifies a GUI as being a "window." Such a window, according to the '978 patent, includes a frame and a display portion surrounded by the frame.[2]

The '978 patent seeks to facilitate human interfacing with a computer by providing a method for selectively rotating windows on a computer display.[3] Thus, the '978 patent is directed to a computer display method that allows a user to rotate

---

[1] '978 patent at col. 1:21-30.

[2] '978 patent at col. 1:31-35.

[3] '978 patent at col. 2:18-29; col. 4:56-58.

windows on a computer display at will such that information can be presented in any orientation desired by the user. In accordance with the '978 patent, windows on a display can be rotated about a preselected rotation point to any desired degree. Such operation is depicted in Figs. 1 and 2.

In Fig. 1, a window 10 is shown in a "home" position. Using rotation button 28, the window 10 can be made to rotate away from the home position as shown in Fig. 2 by rotation about point 30.[4]



Specifically, the '978 patent describes that window 10 has a display portion 14 and a frame formed by header portion 12, vertical scroll bar 16, horizontal scroll bar 18, and line 10.[5] Rotation of window 10 about rotation point 30 is controlled by the user via

---

[4] The '978 patent illustrates a commonly used "window" configuration by showing an Apple® Macintosh® window and a Microsoft® Windows® window. See, col. 3:1 and col. 4:1.

[5] '978 patent at col. 3:13-22.

rotation button 28. The user clicks and holds rotation button 28 with an input device until window 10 arrives at the desired orientation.[6]

The '978 patent describes two modes of selective rotation that allows a user to rotate window 10 within a 360 degree circle. In the first mode described, a user is able to choose any orientation (i.e., 0-360 degrees). For example, Fig. 2 shows rotation of 310 degrees. In the second mode, the user is limited to rotating window 10 to orientations of 0, 90, 180, and 270 degrees.[7]

As shown in Fig. 2, window 10 can be rotated about any of nine different rotation points 32, 34, 36, 38, 40, 42, 44, and 46. According to the '978 patent, any one of the nine points is user-selectable.[8]

B.       The Asserted Claims of the '978 Patent

RT asserts independent method claim 9. The claim reads as follows with the claim terms in dispute shown in bold:

> 9. A method of **selectively rotating a computer display window** having a **display portion** and a **frame surrounding the display portion**, the method comprising the steps of:
>     **determining a rotation point**; and
>     **rotating the window about the rotation point at the discretion of the user**;
>     wherein the plane of the **window**, the plane of rotation, and the rotation point are coplanar.

In addition, RT asserts dependent claims 11 and 13 as follows:

> 11. The method according to claim 9, wherein the step of rotating comprises the step of rotating the **window** by predetermined increments.

---

[6] '978 patent at col. 3:39-44.

[7] '978 patent at col. 3:46-50.

[8] '978 patent at col. 4:22-31.

13. The method according to claim 9, wherein the step of rotating comprises the step of returning the **window** to a zero degree orientation.

RT also asserts independent apparatus claim 14, which reads as follows with the disputed claim terms highlighted:

14. A system for **selectively rotating a computer display window** having a **display portion** and a **frame surrounding the display portion**, the system comprising:

> **means for determining a rotation point**; and
> **means for rotating the window about the rotation point at the discretion of the user**;
> wherein the plane of the **window**, the plane of rotation, and the rotation point are coplanar.

In addition, RT asserts dependent claims 16 and 18 as follows:

16. The system according to claim 14, wherein means for rotating comprises **means for rotating the window by predetermined increments**.

18. The system according to claim 14, wherein means for rotating comprises **means for returning the window to a zero degree orientation**.

## IV. CONSTRUCTION OF DISPUTED TERMS

A. <u>Whether the Preamble Terms in Claims 9 and 14 Are Limitations</u>

According to RT, none of the preamble terms are limiting because the body of the claim defines a complete invention and the preambles merely state a purpose or intended use. Thus, RT contends, no construction of any term in the preamble is necessary. (Dkt. 80 at 5.)

Defendants respond that the terms "selectively rotating" and "computer display window" are limitations and require construction. (Dkt. 84 at 8-10; Dkt. 85 at 2.) According to Defendants, the preamble term "computer display window" in the preamble provide antecedent basis for "the window" in the body of the claim, which requires the

13

preamble term to be limiting. Defendants further argue that clear reliance was placed on the preamble term "selectively rotating" during prosecution to define the claimed invention in distinguishing the prior art. (Id.)

RT disputes that "selectively rotating" was relied upon in the prosecution to distinguish the invention over the prior art. Instead, reference to "selectively rotating" was an ancillary comment regarding the prior art made while refuting the legitimacy of the PTO's combination of two prior art references cited in a rejection of the pending claims. (Dkt. 87 at 4-5.) RT argues that "computer display window" in the preamble is not limiting because the body of the claim is structurally complete in reciting "window" and no reference to the preamble is necessary to understand the scope of the claim. (Dkt. 87 at 5-6.)

Both parties rely upon *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-810 (Fed. Cir. 2002). (Dkt. 80 at 9; Dkt. 84 at 9.) In *Catalina*, the Court recognized that dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention. *See id.* The Court further noted that clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention. *See id.*

      1.      *"computer display window"*

As originally filed, claims 9 and 14 of application serial no. 09/295,164 contained the preamble language in question.[9] In a final office action mailed June 12, 2001, the

---

[9] The '978 patent file history is appended to Apple Inc.'s responsive *Markman* brief.

14

PTO rejected the claims as being obvious over a combination of Horvitz (US 6,016,145) and Jensen (US 5,956,043). In his Response After Final Office Action, on page 2, the applicant argued that Jensen used the term "window" to define a region of space, but "[t]his is not the same as a 'computer display window' as used by one of ordinary skill in the art and as used in the present claims."

The PTO followed with an advisory action on July 20, 2001, stating that "[a]s per claim 1, the 'computer display window' is not part of the claim limitation." In responding to the advisory action on August 20, 2001, with a response titled "Appeal Brief," the applicant stated:

> In response, the Advisory Action dated July 20, 2001, states that "…the 'computer display window' is not part of the claim limitation." However, independent claims 1, 9, and 14 contain "a computer display window" in the first line of each claim. This provides the antecedent basis for "the window" on line 4 of claim 1, on line 5 of claim 9, and on line 4 of claim 14 whereby the limitation is incorporated into the body of the claim."

(Dkt. 84 at 8.)

Accordingly, by the patentee's own admission, the preamble term "computer display window" provides necessary antecedent basis for "window" in the body of each of claims 9 and 14. Further, the applicant relied upon the preamble term as a limitation to distinguish the Jensen prior art.

The Court finds that the preamble term "computer display window" is a limitation of the asserted claims. Further, because the preamble language of "computer display window" includes further defining structure of the limitation (i.e., "having a display portion and a frame surrounding the display portion"), the Court finds that the entire preamble phrase relating to "computer display window" is a limitation of the asserted claims.

2. *"selectively rotating"*

Original independent claims 1, 9, and 14 were rejected in an office action mailed March 8, 2001, as being obvious from Horvitz. In the office action, at page 4, the PTO characterized Horvitz as disclosing a method and a system of selectively rotating a computer display window by inherently determining a rotation point and rotating the window at the discretion of the user.

The PTO examiner's characterization of Horvitz can be seen from Figure 3 of Horvitz (Dkt. 84-4 at 16), which illustrates rotatable windows on a computer screen:



FIG.3

The windows 52 and 58 are rotatable about the vertical Y axis as desired by the user, but such rotation is limited to preselected orientations of 0 degrees (shown) and 90 degrees wherein the window is in a planar view and not in a perspective view (i.e., 3-D) as shown.

16

In response, on May 19, 2001, the applicant amended claims 9 and 14 to recite the additional limitation of "wherein the plane of the window, the plane of rotation, and the rotation point are coplanar." In remarks, the applicant characterized Horvitz as providing a virtual three-dimensional workspace wherein rotation of each of the windows 52 and 58 is about a line, and the window edges remain parallel to two axes (i.e., Y-Z or Y-X). Further, the applicant said amendments to the claims made explicit, in contrast to Horvitz, that the geometry of window rotation is two-dimensional and coplanar.

In the final office action, the PTO asserted new grounds and rejected the claims as being obvious from a combination of Horvitz and Jensen. At page 3 of the final office action, the PTO examiner noted that Horvitz does not disclose the claimed two-dimensional, coplanar geometry. But, the PTO examiner advanced Jensen as disclosing window rotation with such geometry and the contention that it would have been obvious to one of skill in the art to incorporate the teaching of coplanar rotation in Jensen into Horvitz.

An illustration of the PTO examiner's characterization of Jensen in seen in Figs. 13 and 14 of Jensen (Dkt. 85-9):

17



Fig. 12

Fig. 13

Fig. 14

As can be seen, Jensen shows two-dimensional, coplanar rotation about a point of rotation to any desired angle of θ + Δ (i.e., 0-360 degrees) in satisfaction of the "coplanar rotation" limitation in claims 9 and 14.

In the "Response After Final Office Action," applicant traversed the rejection in several ways. (Dkt. 85-10 at 4-6.)

First, applicant characterized Jensen as not disclosing rotation of a "computer display window." That is, applicant said Jensen's tiled image was not a "window." However, such characterization was of no consequence because Horvitz disclosed rotation of a "computer display window."

Second, applicant disputed that Horvitz's disclosure of limited window rotation made obvious use of any form of rotation including Jensen's coplanar, two-dimensional rotation.

Third, applicant said there was no motivation for one of skill to combine Horvitz and Jensen as contended by the examiner.

18

Fourth, and finally, applicant said that because selectively rotating a window to any desired angle, as in Jensen, is not limited only to angles of rotation of 0, 90, 180, 270, and 360 degrees, the window edges will not be maintained parallel to the x, y, and z axes, which according to applicant is a principle of operation of Horvitz. The applicant stated:

> As noted in the Amendment dated May 19, 2001, "[i]n all instances [as taught by *Horvitz],* the edges of the window always remain parallel to two of the three X-, y-, and z-axes." ***By contrast***, a window that has been ***selectively rotated*** to an angle, other than 0, 90, 180, 270, and 360 degrees, ***as claimed*** will have none of its edges parallel to the three x-, y-, and z-axes. Thus, the suggested modification would result in a change to the principle of operation of *Horvitz.* As a result, the teachings of the references are not sufficient to render the claims *prima facie* obvious. (emphasis added)

(Dkt. 85-10 at 6.)

In this statement, the applicant distinguished Horvitz on the basis of the "as claimed" rotation (i.e., "selectively rotating" in the preamble), which is not limited to angles of rotation of 0, 90, 180, 270, and 360 degrees but extends to any angle of rotation within the full range of 0-360 degrees. Applicant did so as a predicate to his argument that despite Jensen showing "selectively rotating" in a coplanar, two-dimensional geometry, as recited in the claims, so modifying Horvitz would defeat Horvitz's three-dimensional workspace capability purpose.

The Court finds that the applicant relied upon the preamble term "selectively rotating" to distinguish Horvitz and provide the underpinning for his argument that combining Horvitz and Jensen in an obviousness rejection was improper. Doing so transformed the preamble term into a claim limitation because, as stated by applicant, it defines, in part, the claimed invention.

19

Accordingly, the Court finds that the preamble term "selectively rotating" is a limitation of the asserted claims.

B.     "Selectively Rotating a Computer Display Window"

Having determined that the preamble term "selectively rotating" is a claim limitation, the Court must determine what construction, if any, is necessary.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. | Rotating a computer display window such that any angle of orientation may be chosen, including an angle other than 0, 90, 180, 270, and 360 degrees. |

RT argues that the term needs no construction because it is not a limitation. RT further argues that Defendants' construction ignores preferred embodiments in the specification that do limit rotation to 90 degree increments. (Dkt. 87 at 6-8.)

Defendants argue that the scope of the specification permits a user to select the amount of window rotation in any amount. (Dkt. 84 at 10.) Further, Defendants contend, the problem being addressed by the '978 patent is to provide a user with an ability to rotate a window "as needed or desired." (Id.) Defendants argue that the prosecution history demonstrates a definitional meaning given to the term in order to obtain allowance and specifically to distinguish the Horvitz prior art. (Dkt. 84 at 7-9.)

RT is correct that the specification describes two modes of window rotation. In one mode, the user is able to choose any degree of rotation within a 360 degree circle. In the other mode, a user's choice of rotation is limited to preselected degrees of rotation such as 0, 90, 180, and 270 degrees. Applied in its broadest sense, "selectively rotating" could include either mode. However, applicant's statement in his response to the final

20

office action rejection concerning the alleged improper combination of Horvitz and Jensen, as set forth above, demonstrates that applicant ascribed a particular meaning to "selectively rotating" and put one of skill in the art on notice as to that particular meaning. In contrast to Horvitz's limited rotation to 0, 90, 180, 270, and 360 degrees, the "selectively rotating" as claimed is, like in Jensen, rotation to any angle of rotation desired. That is to any angle from 0 degrees to 360 degrees including, for example, rotation to 310 degrees as illustrated in Fig. 2. The recitation in Defendants' construction of "any orientation" captures the limitation of any degree of rotation within a 360 degree circle. Thus, the portion "including an angle other than 0, 90, 180, 270, and 360 degrees" is superfluous and unnecessary.

Accordingly, the Court construes "selectively rotating a computer display window" to mean "rotating a computer display window such that any angle of orientation may be chosen."

C.      "Computer Display Window/Window"

Having determined that the preamble term "computer display window" is a claim limitation, the Court must determine what construction, if any, is necessary for the term "window" that appears in the body of each asserted claim.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: a graphical user interface window. | A GUI that is displayed on the display monitor or screen where the GUI may be sized to display all or only a portion of total information made available for viewing by a program. |

21

RT relies upon its contention the preamble term "computer display window" is not limiting. As to the term "window" used in the body of each claim, RT says it is easily understood as a GUI and no construction is necessary. However, if construction is necessary, RT alternatively proposes "graphical user interface window." RT also disputes Defendants' construction as being overly limited to one disclosed embodiment. (Dkt. 80 at 12-13.)

Defendants contend that the applicant during prosecution used the term in a manner that defined it to be a displayed GUI that can be resized. (Dkt. 85 at 9.) Further, the patent specification defines a "window" according to its inherent characteristics, which includes resizing (Dkt. 85 at 10.) Finally, Defendants point to both Apple's OS window and Microsoft's OS window, which are resizable, as examples of a "window" in the specification.

As the parties agree, the specification defines "computer display window" and "window" as being a GUI. While a fundamental characteristic of a typical GUI at the time of filing for the '978 patent may have been a characteristic of being resizable, nowhere does the patented invention implicate such a requirement as Defendants suggest. Conversely, RT's alternative construction merely states the agreement of the party that a "window" is a GUI and then restates "window."

Accordingly, the Court construes "computer display window" and "window" to mean "a GUI displayable on a monitor or a screen."

22

D.     "Display Portion"

As indicated above, because the preamble term "computer display window" is a limitation, so is the term "display portion." The Court must determine whether construction is necessary and if so what that construction should be.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | The visible/viewable portion of the total information that a program makes available for viewing. |

RT contends that the term is one of common usage and needs no construction. Further, RT says, Defendants impose unfounded limitations. (Dkt. 80 at 13-14.)

Defendants point to what they contend to be a specific definition in the specification in support of their construction. (Dkt. 85 at 14.) Specifically, Defendants identify:

> "a window may be sized to display all or only ***a portion of the total information made available for viewing by the program***. If the window displays only a portion of the total information, then the user is provided with one or more scroll bars that allow the user to move the ***display portion*** to view other portions of the total information" 1:44-49 (emphasis added).

Defendants further argue that inclusion of "visible/viewable" in the construction clarifies that the term does not refer to program portions that are obscured from the user. (Id.)

The import of such definition in the specification is that a "display portion" is where information is viewed. In terms of the patent's objective of facilitating human interfacing with a computer, in the context of rotating windows on a computer display, only the portion where information is viewed is of consequence. That a program is what makes information available for viewing is ancillary to that objective.

23

Accordingly, the Court construes "display portion" to mean "portion of the window for viewing information."

E.    "A Frame Surrounding the Display Portion"

As indicated above, because the preamble term "computer display window" is a limitation, the term "a frame surrounding the display portion" is also a limitation. The Court must determine whether construction is necessary and if so what that construction should be.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. | A border displayed on the graphical user interface surrounding the display portion. |

RT argues that the term is a common one that is well understood and, thus, no construction is necessary. RT criticizes Defendants' construction as including extraneous limitations. (Dkt. 80 at 14-15.)

Defendants advance the position that the term designates a border on every side of the display portion and relies upon the plain and ordinary meaning of the term. According to Defendants, consistent with the plain and ordinary meaning, the specification uses the term "frame" to mean that there is a surrounding that encircles and encloses the display portion. (Dkt. 84 at 13.) Further, Defendants argue the frame must be visibly displayed because it is specified to be part of the computer display window. (Dkt. 84 at 14.)

The parties appear to agree that the term is well understood and has a plain and ordinary meaning. However, only Defendants propose what that meaning should be. Their belief that the term "frame" carries a plain and ordinary meaning of being a "border" is consistent with what is described and exemplified in the specification. Their

24

construction, however, includes a superfluous limitation of "displayed on the graphical user interface." Moreover, including "surrounding the display portion" in the construction, which is language found in the claim itself, is unnecessary. The term "surrounding" requires no construction. The term "display portion" is otherwise construed and that construction is adopted.

Accordingly, the Court construes "a frame" to mean "a border."

F.    "Determining a Rotation Point"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | Rotation point is determined by the user. |

RT contends that Defendants improperly narrow claim scope to only one embodiment with their construction. Specifically, RT points to a description in the specification of an alleged embodiment providing a preselection routine for determining rotation points. (Dkt. 80 at 15-16.)

Defendants argue the specification teaches only that the user determines the rotation point. (Dkt. 84 at 15.) They say what RT points to is the preselection routine presented to the user before rotation begins where default rotation points are shown to the user and the user determines which rotation point is to be applied. (Dkt. 84 at 16.)

The Court finds that Defendants' proposed construction fails to address the term itself. Defendants' proposed construction simply restates the words of the claim in a rearranged order and then appends an extraneous limitation that is without support in the claims. The Court rejects Defendants' attempt to so limit the claims.

Accordingly, the Court concludes that no construction is necessary.

25

G.  "Rotation Point"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: a point about which a window is rotated. | Center of rotation. |

RT contends that its alternative construction follows the plain and ordinary meaning of the term. (Dkt. 80 at 16-17.)

According to Defendants, the plain and ordinary meaning of the term "rotation" is to "turn around a center point" or "turn in a circle" as illustrated in the specification where rotation point 30 is shown in Figure 2. (Dkt. 85 at 7.) Defendants further argue that RT's alternative construction leaves the rotation point "untethered" from the rotating window. (Id.)

Both parties' constructions give the essence of the plain and ordinary meaning of the term. One of skill would readily understand such meaning and scope. Further, Defendants' construction and their arguments in support of it do not, as RT contends, seek to limit the term to only one embodiment where rotation point 30 in Fig. 2 is in the center of the window. Nevertheless, Defendants' contention is vague as to RT's proposed construction permitting a rotating window to be untethered from its rotation point. Clear to one of skill is that, because the window is rotating about its rotation point, the rotation point is necessarily on or within the window, although not necessarily at the center of the window.

Accordingly, the Court finds that no construction is necessary.

H.  "Rotating the Window About the Rotation Point at the Discretion of the User"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: rotating the window about the rotation point upon receipt of a user input. | Apple: moving each part of the window in a circular path about the rotation point such that the user chooses the window orientation.<br><br>Samsung & Motorola: turning the window about a rotation point in a circular path, where the user may select any amount of rotation.<br>Alternatively: this term is indefinite under 35 U.S.C. § 112, second paragraph. |

The parties first dispute whether "rotating the window about the rotation point" requires the window to follow a circular path as it rotates about the rotation point.

RT contends that a limitation requiring "in a circular path" is unwarranted because the specification does not restrict window rotation to a specific path. (Dkt. 80 at 19.)

Defendants respond that the specification that rotation of the window is based on a 360 degree circle and thus mandates a circular path about the rotation point. (Dkt. 84 at 17; Dkt. 85 at 15-17.) Defendants specifically point to col. 3:7-12:

> "[d]egrees of rotation will be based on a 360 degree circle measured in a counter-clockwise manner about a rotation point (not shown) with 0 degrees to the right, 90 degrees above, 180 degrees to the left, and 270 degrees below the rotation point."

(Dkt. 85 at 16.)

RT attempts to deflect the importance of this description by saying that the specification's reference to degrees of rotation is merely stating that a user can select a

27

new orientation but says nothing about the path taken to get there. (Dkt. 87 at 13.) In fact, argues RT, the specification never discusses any specific path for the rotation. (Id.)

However, to one of skill in the art, the specification is replete with descriptions and illustrations of rotating the window in a circular path. The illustration of window rotation presented in Figs. 1 and 2 shows movement of the window around rotation point 30 in a circular path. As Defendants contend, one of skill would read and understand "rotating the window about the rotation point" in a mathematical sense, which is rotation in a circular path. (Dkt. 84 at 17.)

The Court finds that Defendants are correct that "rotating the window about the rotation point" means "in a circular path."

The parties also dispute the meaning of "at the discretion of the user." RT contends that this portion of the claim term means that rotation occurs upon receipt of a user input. RT cites the specification in support, but such cite only discloses the user manipulating the rotation button 28. (Dkt. 87 at 14.) As Defendants suggest, what RT proposes adds a conditional or temporal limitation that is not present in the claims as written, the specification, or the prosecution history. (Dkt. 84 at 17.)

The Defendants argue that "at the discretion of the user" means that the user chooses the window orientation or that the user may select any amount of rotation. In support, Defendants point to the specification describing a user's ability to choose any orientation using the rotation button. (Dkt. 84 at 17; Dkt. 85 at 18.)

The Court agrees with Defendants. The rotation of the window about the rotation point is a matter of user choice. Thus, the user determines to what extent the window is

rotated. This determination is necessarily a matter of user discretion since it is based on user choice.

Accordingly, the Court construes the term "rotating the window about the rotation point at the discretion of the user" to mean "at the user's determination, turning the window in a circular path about a rotation point."

I.    Means-Plus-Function

The parties agree that the following terms are written in a "means-plus-function" format and are to be construed according to §112, ¶ 6. (Dkt. 80 at 22-27; Dkt. 84 at 20-23; Dkt. 85 at 19-23.)

    1.    *"means for determining a rotation point"*

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Function: determining a rotation point | Function: determining a rotation point |
| Structure: a computer program that selects (i) a default rotation point, or (ii) a user-selected rotation point for a window, and equivalents thereof. | Structure: not disclosed |

RT contends that the specification discloses that a program allows the user to select a rotation point and that such is sufficient disclosure of structure. (Dkt. 80 at 24.) Specifically, RT argues that the preselection routine described is a computer program that carries out a step of determining a rotation point. (Dkt. 87 at 16.)

Defendants respond that for a computer-related invention, the law does not permit the disclosure of software alone to structurally support a means-plus-function limitation.

29

Rather, an algorithm expressed in some fashion by a step-by-step procedure must be disclosed. (Dkt. 85 at 21-22.)

Defendants contend that nowhere does the specification clearly link or associate any structure to the function recited in the claim as is required of the means-plus-function claim format. (Dkt. 85 at 20.) Next, Defendants contend that the specification does not disclose an algorithm capable of performing the function recited in the claim. (Dkt. 85 at 20-21.)

The Court agrees with Defendants. Under applicable legal authority, when the specification simply restates the function to be performed, there is no sufficient structure under § 112, ¶ 6. *See, e.g.*, *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Accordingly, the Court finds that claim 14 is invalid for indefiniteness because no corresponding structure is disclosed in support of the "means for determining a rotation point" limitation.

2. *"means for rotating the window about the rotation point at the discretion of the user"/ "means for rotating the window by predetermined increments"/ "means for returning the window to a zero degree orientation"*

The Court having determined that Claim 14 is invalid for indefiniteness finds that the terms "means for rotating the window about the rotation point at the discretion of the user," "means for rotating the window by predetermined increments" and "means for returning the window to a zero degree orientation" as found in Claim 14 and in Claims 16 and 18, which depend upon Claim 14, need not be reached by the Court. The Court,

30

because Claim 14 is held invalid as indefinite, declines to construe such other terms as found within Claim 14 or those other claims that depend from it.

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator agreed upon by the parties. As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

So Ordered and Signed on this

**Aug 1, 2013**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

ROTATABLE TECHNOLOGIES LLC,

        Plaintiff,

v.

NOKIA INC. ET AL.,

        Defendants.

CIVIL ACTION NO. 2:12-CV-265

JURY TRIAL DEMANDED

CONSOLIDATED

## <u>FINAL JUDGMENT</u>

Pursuant to the Stipulation and Joint Motion for Entry of Final Judgment ("Stipulation"), the Court HEREBY ORDERS as follows:

1.      This is a patent infringement action brought by Rotatable Technologies LLC ("Rotatable") against Defendant Motorola Mobility LLC ("Mobility") and others.  In response, Mobility asserted affirmative defenses for invalidity and non-infringement.

2.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338.

3.      The patent-in-suit is United States Patent No. 6,326,978 ("the '978 patent"). Rotatable asserts that it is the owner by assignment of the '978 patent, with all substantive rights in and to that patent.

4.      The '978 patent is entitled "Display Method For Selectively Rotating Windows On A Computer Display."

5.      In its infringement contentions, Rotatable's allegations of infringement "include, but are not limited to" the following Mobility products (the "Accused Products"), which

Rotatable accuses of infringing claims 9, 11, 13, 14, 16, and 18 (the "Asserted Claims") of the '978 patent:

- **Android Smart Phones**: Atrix HD; Atrix; Atrix 2; Backflip; Bravo; Charm; Citrus; Cliq; Cliq 2; Cliq XT; Defy; Deft XT; Devour; Droid; Droid Bionic; Droid Pro; Droid Razr; Droid Razr HD; Drad Razr M; Droid Razr Maxx; Droid Razr Maxx HD; Droid 2; Droid 2 Global; Droid 3; Droid 4; Droid X; Droid X2; i1; i867; Flipside; Flipout; Milestone; Milestone Max; Milestone Plus; Milestone X; Milestone X2; Milestone XT720; Motorola Admiral; Motorola Electrify; Motorola Electrify 2; Motorola Electrify M; Motorola Photon 4G; Motorola Photon Q 4G LTE; Motorola Titanium; Motorola Triumph; Motorola XPRT; Sprice-XT300; XT886.

- **Android Tablets**: Motorola Xyboard 10.1; Motorola Xyboard 8.2; Motorola Xoom; Droid Xyboard 10.1; Droid Xyboard 8.2.

6.  On August 2, 2013, the Court entered a Memorandum Opinion and Order on claim construction (the "Claim Construction Order") in the above-captioned case construing certain disputed terms in the Asserted Claims of the '978 patent.

7.  The Court's Claim Construction Order determined that claim 14 and its dependent claims (i.e., claims 16 and 18) are invalid for indefiniteness "because no corresponding structure is disclosed in support of the 'means for determining a rotation point' limitation."

8.  The Court's Claim Construction Order also determined that the preamble term "selectively rotating" is a limitation of all of the Asserted Claims.

9.  The Court's Claim Construction Order defines (1) the term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of

orientation may be chosen," and (2) the term "rotating the window about the rotation point at the discretion of the user" as "at the user's determination, turning the window in a circular path about a rotation point."

10.     For purposes of the Stipulation and any resulting appeal only, the parties stipulate and agree that under the Court's Claim Construction Order, Rotatable cannot prevail on the issue of infringement of the Asserted Claims either literally or by equivalents, on at least two separate and independent grounds:

  a. Rotatable cannot prove that any Mobility Product[1] practices the limitation of "selectively rotating a computer display window," as construed by the Court, because the Mobility Products do not permit "rotating a computer display window such that any angle of orientation may be chosen" (e.g. because the Mobility Products are incapable of displaying information on the screen at any angle other than either for portrait viewing or landscape viewing); and

  b. Rotatable cannot prove that any Mobility Product practices the limitation of "rotating the window about a rotation point at the discretion of the user," as construed by the Court, because the Mobility Products do not contain windows that turn "in a circular path about a rotation point."

11.     The parties further stipulate and agree that under the Court's Claim Construction Order, Rotatable also cannot prevail on the issue of infringement of claim 14 and its dependent claims, for at least the reason that the Court determined that those claims are invalid for

---

[1] "Mobility Product(s)" refers to the Accused Products and all other Mobility mobile phones and tablets previously and currently made, used, sold, offered for sale in, or imported into the United States that run the Android operating system.

indefiniteness based on the '978 patent's lack of disclosure of any corresponding structure in support of the "means for determining a rotation point" limitation.

12.    Therefore, in view of the Court's Claim Construction Order with respect to the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and "means for determining a rotation point" and the bases set forth in paragraphs 10 and 11, the parties stipulate and agree to the entry of a stipulated judgment of non-infringement with regard to the application of the Asserted Claims (as construed in the Court's Claim Construction Order) to the Mobility Products.

13.    Mobility's unadjudicated affirmative defenses asserted in Mobility's answer dated August 10, 2012, are hereby dismissed without prejudice.  This dismissal is without prejudice to Mobility's rights to reassert the foregoing affirmative defenses should any of Rotatable's infringement claims regarding the '978 patent be revived for any reason (including, but not limited to, modification of the Court's claim constructions on appeal) and to contend that Rotatable has waived any claims of indirect infringement against Mobility should Rotatable later attempt to assert any such claims.

14.    This Final Judgment is without prejudice to Rotatable's ability to appeal the Court's Claim Construction Order, including the construction of the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and "means for determining a rotation point."  Moreover, if judgment is not affirmed on any appeal and this matter is remanded, the parties reserve all rights to assert and/or challenge the court's modified claim construction and application of any or all of the claim limitations, either in this matter or a separate matter.

15.     This Final Judgment is without prejudice to any rights parties have post-judgment and/or the parties' rights to appeal any other aspect of the Court's ruling preceding the Stipulated Order of Dismissal and Final Judgment, as well as future orders issued by the Court.

16.     Accordingly, the Court enters this Final Judgment in favor of Mobility on Rotatable's claim for infringement of the '978 patent as set forth in Rotatable's complaint.

17.     Each party shall bear its own fees and costs, including attorneys' fees, incurred in this action to date.

**So ORDERED and SIGNED this 12th day of September, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ROTATABLE TECHNOLOGIES LLC, | Civil Action No. 2:12-cv-265-JRG |
| **Plaintiff** | |
| | **JURY TRIAL DEMANDED** |
| **vs.** | |
| | **CONSOLIDATED CASE** |
| NOKIA INC., ET AL., | |
| **Defendant.** | |

## FINAL JUDGMENT

Pursuant to the Stipulation and Joint Motion for Entry of Final Judgment ("Stipulation"), the Court HEREBY ORDERS as follows:

1.      This is a patent infringement action brought by Rotatable Technologies LLC ("Rotatable") against Samsung Telecommunications America, LLC and Samsung Electronics America, Inc. (collectively, "Samsung") and others.  In response, Samsung asserted affirmative defenses and counterclaimed for declaratory judgments of invalidity and non-infringement.

2.      This Court has jurisdiction over the claims and counterclaims in this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2202.

3.      The patent-in-suit is United States Patent No. 6,326,978 ("the '978 patent"). Rotatable asserts that it is the owner by assignment of the '978 patent, with all substantive rights in and to that patent.

4.      The '978 patent is entitled "Display Method For Selectively Rotating Windows On A Computer Display."

5.      In its infringement contentions, Rotatable's allegations of infringement "include, but are not limited to" the following Samsung products (the "Accused Products"), which

Rotatable accuses of infringing claims 9, 11, 13, 14, 16, and 18 (the "Asserted Claims") of the '978 patent:

- **<u>Android Smart Phones</u>**: Nexus S; Infuse; Galaxy Express; Galaxy Note II; Galaxy Rugby Pro; Galaxy Exhilarate; Galaxy S II Skyrocket; Galaxy S III; Galaxy S II; Galaxy Appeal; Rugby Smart; DoubleTime; Captivate; Captivate Glide; Infuse 4G; Conquer 4G; Epic; Nexus S 4G; Intrepid; Galaxy Victory; Galaxy Nexus; Intercept; Transform; Transform Ultra; Dart; Gravity SMART; Galaxy Exhibit; Galaxy S Relay 4G; Exhibit 4G ; Galaxy S Blaze 4G; Sidekick 4G; Galaxy Note; Behold II; Galaxy S 4G; Vibrant; Gem; Illusion; Galaxy Stellar; Continuum; Stratosphere; Stratosphere II; Droid Charge; Fascinate.

- **<u>Android Tablets</u>**: GT-N8013; GT-P1010/W16; GT-P3113; GT-P5113; GT-P6210; G-TP7310; GT-P7510/M16; GT-P8110.

- **<u>Windows Smart Phones</u>**:  Blackjack; SAMSUNG BLACKJACK II; Propel; Jack; Focus Flash; Epix; Focus S; Saga; Omnia; Omnia II.

6.     On August 2, 2013, the Court entered a Memorandum Opinion and Order on claim construction (the "Claim Construction Order") in the above-captioned case construing certain disputed terms in the Asserted Claims of the '978 patent.

7.      The Court's Claim Construction Order determined that claim 14 and its dependent claims (*i.e.*, claims 16 and 18) are invalid for indefiniteness "because no corresponding structure is disclosed in support of the 'means for determining a rotation point' limitation."

8.     The Court's Claim Construction Order also determined that the preamble term "selectively rotating" is a limitation of all of the Asserted Claims.

9.     The Court's Claim Construction Order defines (1) the term "selectively rotating a

- 2 -

computer display window" as "rotating a computer display window such that any angle of orientation may be chosen," and (2) the term "rotating the window about the rotation point at the discretion of the user" as "at the user's determination, turning the window in a circular path about a rotation point."

10.    For purposes of the Stipulation and any resulting appeal only, the parties stipulate and agree that under the Court's Claim Construction Order, Rotatable cannot prevail on the issue of infringement of the Asserted Claims, either literally or by equivalents, on two separate and independent grounds:

(1) Rotatable cannot prove that any Samsung Product[1] practices the limitation "selectively rotating a computer display window," as construed by the Court, because the Samsung Products do not permit "rotating a computer display window such that any angle of orientation may be chosen" (*e.g.* because the Samsung Products are incapable of displaying information on the screen at any angle other than for either portrait viewing or landscape viewing); and

(2) Rotatable cannot prove that any Samsung Product practices the limitation "rotating the window about the rotation point at the discretion of the user," as construed by the Court, because the Samsung Products do not contain windows that turn "in a circular path about a rotation point."

11.    The parties further stipulate and agree that under the Court's Claim Construction Order, Rotatable also cannot prevail on the issue of infringement of claim 14 and its dependent claims, for at least the reason that the Court determined that those claims are invalid for

---

[1] "Samsung Product(s)" refers to the Accused Products and all other Samsung mobile phones and tablets previously and currently made, used, sold, offered for sale in, or imported into the United States that run the Android or Windows operating system.

indefiniteness based on the '978 patent's lack of disclosure of any corresponding structure in support of the "means for determining a rotation point" limitation.

12.     Therefore, in view of the Court's Claim Construction Order with respect to the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and "means for determining a rotation point" and the bases set forth in paragraphs 10 and 11, the parties stipulate and agree to the entry of a stipulated judgment of non-infringement with regard to the application of the Asserted Claims (as construed in the Court's Claim Construction Order) to the Samsung Products.

13.     Samsung's unadjudicated affirmative defenses and counterclaims asserted in Samsung's answer and counterclaims, dated August 15, 2012, are hereby dismissed without prejudice.  This dismissal is without prejudice to Samsung's rights to reassert the foregoing affirmative defenses and counterclaims should any of Rotatable's infringement claims regarding the '978 patent be revived for any reason (including, but not limited to, modification of the Court's claim constructions on appeal) and to contend that Rotatable has waived any claims of indirect infringement against Samsung should Rotatable later attempt to assert any such claims.

14.     This Final Judgment is without prejudice to Rotatable's ability to (1) appeal or otherwise seek reconsideration of the Court's Claim Construction Order, including the construction of the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and "means for determining a rotation point," or  (2) assert infringement claims against products that differ materially from the Samsung Products with respect to the Court's constructions of the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and/or "means for determining a rotation point."  Moreover, if judgment is not affirmed on

- 4 -

any appeal and this matter is remanded, the parties reserve all rights to assert and/or challenge the court's modified claim construction and application of any or all of the claim limitations, either in this matter or a separate matter.

15.     Accordingly, the Court enters this Final Judgment in favor of Samsung on Rotatable's claim for infringement of the '978 patent as set forth in Rotatable's complaint.

16.     Each party shall bear its own fees and costs, including attorneys' fees, incurred in this action.

**So ORDERED and SIGNED this 12th day of September, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ROTATABLE TECHNOLOGIES LLC, | |
| **Plaintiff** | Civil Action No. 2:12-cv-265-JRG |
| vs. | |
| NOKIA INC., ET AL., | **CONSOLIDATED CASE** |
| **Defendant.** | |

## FINAL JUDGMENT

Pursuant to the Stipulation and Joint Motion for Entry of Final Judgment ("Stipulation"), the Court HEREBY ORDERS as follows:

1.     This is a patent infringement action brought by Rotatable Technologies LLC ("Rotatable") against Defendant Apple Inc. ("Apple") and others.  In response, Apple asserted affirmative defenses and counterclaimed for declaratory judgments of invalidity and non-infringement.

2.     This Court has jurisdiction over the claims and counterclaims in this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2202.

3.     The patent-in-suit is United States Patent No. 6,326,978 ("the '978 patent").  Rotatable asserts that it is the owner by assignment of the '978 patent, with all substantive rights in and to that patent.

4.     The '978 patent is entitled "Display Method For Selectively Rotating Windows On A Computer Display."

5.     In its infringement contentions, Rotatable's allegations of infringement "include, but are not limited to" the following Apple products (the "Accused Products"), which Rotatable

1

alleges infringe claims 9, 11, 13, 14, 16, and 18 (the "Asserted Claims") of the '978 patent: iPhone 3G, iPhone 3GS, iPhone 4, and the iPhone 4S, iPad, the iPad 2, and the iPad (Third Generation)

6.      On August 2, 2013, the Court entered a Memorandum Opinion and Order on claim construction (the "Claim Construction Order") in the above-captioned case construing certain disputed terms in the Asserted Claims of the '978 patent.

7.       The Court's Claim Construction Order determined that claim 14 and its dependent claims (*i.e.*, claims 16 and 18) are invalid for indefiniteness "because no corresponding structure is disclosed in support of the 'means for determining a rotation point' limitation."

8.      The Court's Claim Construction Order also determined that the preamble term "selectively rotating" is a limitation of all of the Asserted Claims.

9.      The Court's Claim Construction Order defines (1) the terms "computer display window" and "window" as "a GUI displayable on a monitor or a screen," (2) the term "selectively rotating a computer display window" as "rotating a computer display window such that any angle of orientation may be chosen," and (3) the term "rotating the window about the rotation point at the discretion of the user" as "at the user's determination, turning the window in a circular path about a rotation point."

10.     The parties stipulate and agree that under the Court's Claim Construction Order, Rotatable cannot prevail on the issue of infringement of the Asserted Claims, either literally or by equivalents, on at least two separate and independent grounds:

(1) Apple Products[1] do not and cannot "selectively rotate[ing] a computer display window," as construed by the Court, because the Apple Products do not permit "rotating a computer display window such that any angle of orientation may be chosen" (*e.g.* because the Apple Products are incapable of displaying information on the screen at any angle other than for either portrait viewing or landscape viewing); and

(2) Apple Products do not and cannot "rotate[ing] the window about the rotation point at the discretion of the user," as construed by the Court, because the Apple Products do not contain windows that turn "in a circular path about a rotation point."

11.     The parties further stipulate and agree that under the Court's Claim Construction Order, Rotatable also cannot prevail on the issue of infringement of claim 14 and its dependent claims, for at least the reason that the Court determined that those claims are invalid for indefiniteness based on the '978 patent's lack of disclosure of any corresponding structure in support of the "means for determining a rotation point" limitation.

12.     Therefore, in view of the Court's Claim Construction Order with respect to the terms "selectively rotating a computer display window," "rotating the window about the rotation point at the discretion of the user," and "means for determining a rotation point" and the bases set forth in paragraphs 10 and 11, the parties stipulate and agree to the entry of a stipulated judgment of non-infringement with regard to the application of the Asserted Claims (as construed in the Court's Claim Construction Order) to the Apple Products.

13.     Apple's unadjudicated affirmative defenses and counterclaims asserted in Apple's answer and counterclaims, dated August 10, 2012, are dismissed without prejudice.  This

---

[1] "Apple Product(s)" refers to the Accused Products and all other Apple mobile phones and tablets previously and currently made, used, sold, offered for sale in, or imported into the United States that run the iOS operating system.

dismissal without prejudice is made subject to Apple's rights to reassert the foregoing

affirmative defenses and counterclaims should any of Rotatable's infringement claims regarding

the '978 patent be revived for any reason (including, but not limited to, modification of the

Court's claim constructions on appeal and to contend that Rotatable has waived any claims of

indirect infringement against Apple should Rotatable later attempt to assert any such claims.

14.     This Final Judgment is without prejudice to Rotatable's ability to appeal the

Court's Claim Construction Order, including the construction of the terms "selectively rotating a

computer display window," "rotating the window about the rotation point at the discretion of the

user," and "means for determining a rotation point." Moreover, if judgment is not affirmed on

any appeal and this matter is remanded, the parties reserve all rights to assert and/or challenge

the court's modified claim construction and application of any or all of the claim limitations,

either in this matter or a separate matter.

15.     This Final Judgment is entered without prejudice to any rights parties have post-

judgment and/or the parties' rights to appeal any other aspect of the Court's ruling preceding the

Stipulated Order of Dismissal and Final Judgment, as well as future orders issued by the Court.

16.     Accordingly, the Court enters this Final Judgment in favor of Apple on

Rotatable's claim for infringement of the '978 patent as set forth in Rotatable's complaint.

17.     The parties further stipulate that each party should bear its own fees and costs,

including attorneys' fees, incurred in this action to date.

**So ORDERED and SIGNED this 18th day of September, 2013.**


RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 26th day of December, 2013, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered users:

Roderick M. Thompson
Eugene Y. Mar
Daniel C. Callaway
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104

Jesse J. Jenner
Gene W. Lee
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

Janice V. Jabido
Ropes & Gray LLP
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606

Susan K. Knoll
Keana Taylor
Wong, Cabello, Lutsch, Rutherford
  & Brucculeri, LLP
20333 SH 249, Suite 600
Houston, Texas 77070

I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with United Parcel Service

for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL

CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly Gannon

Shelly Gannon

GIBSON MOORE APPELLATE SERVICES

421 East Franklin Street, Suite 230

Richmond, VA 23219

# CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements,
## And Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains <u>8,433</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

December 26, 2013                          <u>/s/ Hao Ni</u>
                                            Hao Ni